LEONE BOSURGI, TRANSFEREE OF THE ESTATE OF ADRIANA BOSURGI, DECEASED, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

EMILIO BOSURGI, TRANSFEREE OF THE ESTATE OF ADRIANA BOSURGI, DECEASED, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5250-71, 5251-71. Filed December 23, 1986.

Leone Bosurgi and Emilio Bosurgi, pro se.
*Jack H. Klinghoffer*, for the respondent.

OPINION

WILLIAMS, *Judge*:* These cases are before the Court on

---

*By order of the Chief Judge, these cases were assigned to Judge Williams for decisions and opinion.

respondent's motion for default judgment pursuant to Rule 123(a), Tax Court Rules of Practice and Procedure.

The Commissioner determined a deficiency in the Federal estate tax of the Estate of Adriana Bosurgi, deceased, in the amount of $403,988.78, and an addition to tax pursuant to section 6651(a)(1)[1] of $100,997.20. Respondent asserts that petitioners, sons of Adriana Bosurgi, are liable for the determined amounts of estate tax and addition to tax as transferees of the assets of the estate.[2] The issue this Court must decide is whether to grant respondent's motion for entry of a default against petitioners.

The decedent, Adriana Bosurgi, was an Italian citizen and nonresident alien of the United States. Her sons, Leone and Emilio Bosurgi, were also Italian citizens and nonresident aliens of the United States at the time their petitions in these cases were filed. These cases are the vestige of a long and complex history of litigation.[3] We state only the salient parts of such history below.

On March 2, 1971, the United States made four jeopardy assessments, arising out of the estate tax liability of the Estate of Adriana Bosurgi, against the following: Leone Bosurgi and Emilio Bosurgi, as executors of the Estate of Adriana Bosurgi; Chemical Bank, as statutory executor; and, Leone Bosurgi and Emilio Bosurgi, each as transferees of the assets of the estate. On March 3, 1971, the United States filed a complaint in the U.S. District Court for the Southern District of New York against petitioners and Chemical Bank to foreclose certain tax liens of the United States arising out of the estate tax liability of the Estate of Adriana Bosurgi. On June 2, 1972, the District Court entered default judgments against Leone Bosurgi and Emilio Bosurgi, respectively, as transferees of assets of the

---

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.

[2] The burden of proof to show that petitioner is liable as a transferee is on respondent. Sec. 6902(a).

[3] In this Court, the litigation involved five cases. In addition to the two cases that are the subject of the motion presently before this Court, the litigation involved (1) the Estate of Adriana Bosurgi, docket No. 5252-71, in which respondent filed motion to dismiss for failure to prosecute properly, which was granted on May 21, 1986; (2) Fritzsche Dodge & Olcott, Inc., docket No. 5061-71, in which one of two statutory executors of the Bosurgi estate settled its case, and (3) Chemical Bank, docket No. 4986-71, in which the other statutory executor of the Bosurgi estate settled its case.

estate, for their failure to appear, answer, or make any motions with respect to the (amended) complaint of the United States.[4]

The District Court litigation involving claims by Chemical Bank, Fritsche Dodge & Olcott, Inc., and other parties to the litigation continued with respect to assets of the estate held in escrow by Benedict Ginsberg, one of petitioners' former counsel. See *United States v. Bosurgi*, 389 F. Supp. 1088 (S.D. N.Y. 1975), affd. in part, revd. in part, and remanded 530 F.2d 1105 (2d Cir. 1976), on remand 84 F.R.D. 668 (S.D. N.Y. 1979); *United States v. Bosurgi*, 750 F.2d 216 (2d Cir. 1984).

On March 25, 1976, counsel for petitioners in these cases filed a motion to withdraw as counsel of record pursuant to Rule 24(c). Counsel cited as reasons for withdrawal the fact that all attempts at communication with petitioners since July 1971, had gone unanswered. A copy of the motions and an accompanying order directing petitioners to file a notice of objection on or before June 1, 1976, was served on petitioners at "c/o Prof. Avv. Domenico Barillaro, Via Cosseria 1, Rome, Italy," petitioners' last known address. Petitioners did not respond. The Court granted counsel's motion on June 9, 1976.

On December 14, 1985, the Court served petitioners, by registered mail at their last know address, with notices of trial of these cases. The notices of trial were returned to the Court and petitioners did not appear at the call of the calendar of these cases on April 29, 1986. Petitioners did not appear at the trial of these cases on May 8, 1986. The Court has had no communication on behalf of petitioners since the request of their counsel to withdraw.

In his answer to each petition in these cases, respondent pleads the following facts:

(a) Adriana Bosurgi, an Italian citizen and nonresident alien of the United States, died on March 27, 1963. No estate tax return was filed with respondent.

---

[4]The issue of the transferee liability of petitioners was the subject of this related, but separate, proceeding before the District Court for the Southern District of New York during the pendency of this case. Because respondent alleged that the issue litigated in the District Court would dispose of the issue before this Court, trial of this case was continued pending resolution of the District Court litigation.

(b) Petitioner is a son of the decedent, Adriana Bosurgi, and the brother of Emilio [or Leone] Bosurgi.

(c) On the date of her death, Adriana Bosurgi maintained a custodian account at the Chemical Bank in New York, New York, in which she held securities of an aggregate value of $1,097,189.39.

(d) After Adriana Bosurgi died, the securities held in the custodian account at the Chemical Bank were sold and the proceeds deposited into two separate accounts at the Chemical Bank: a joint checking account in the names of Adriana Bosurgi and/or Leone Bosurgi and/or Emilio Bosurgi; and, in a joint checking account in the names of Leone Bosurgi and/or Emilio Bosurgi. All funds in the former account were subsequently transferred into the latter--that of Leone Bosurgi and/or Emilio Bosurgi.

(e) The aggregate proceeds from the sale of securities in Adriana Bosurgi's custodian account at the Chemical Bank deposited into these joint accounts exceeds the amount of the deficiency in estate tax and addition to tax pursuant to section 6651 determined by respondent.

(f) The transfers described in paragraph (d) above were made to petitioners without consideration.

(g) Respondent assessed the deficiency in estate tax and addition to tax on March 2, 1971 and filed a Federal tax lien on March 2, 1971. No part of the deficiency in estate tax was paid.

(h) By reason of the transfer of assets to petitioners, and their receipt by petitioners, petitioners thereby became transferees of the assets of the estate of Adriana Bosurgi, the decedent, within the meaning of section 6901, and of Section 12.1-1, New York Estates, Powers and Trusts Laws. Further, the transferor, the estate of Adriana Bosurgi, was rendered insolvent by reason of the transfer of assets to petitioners. The insolvency of the transferor precludes reasonable efforts to collect the deficiency in estate tax and addition to tax from the transferor.

Whereupon respondent prayed that the deficiency and addition to tax be in all respects approved, and Leone and Emilio Bosurgi be held liable as transferees of the assets of the Estate of Adriana Bosurgi.

Respondent urges us to enter a default against petitioners pursuant to Rule 123(a). Petitioners failed to appear at the call of the calendar and at the trial of the case, and neither petitioner nor any representative on behalf of either petitioner has responded to this Court's notices or orders for more than 10 years. Respondent cites by analogy rule 55 of the Federal Rules of Civil Procedure (FRCP), from which Rule 123(a) was derived. For the reasons discussed below, we agree that respondent is entitled to entry of a default against petitioner.

Rule 123, effective as of January 1, 1974, provides in relevant part:

(a) Default: When any party has failed to plead or otherwise proceed as provided by these Rules or as required by the Court, he may be held in default by the Court either on motion of another party or on the initiative of the Court. Thereafter, the Court may enter a decision against the defaulting party, upon such terms and conditions as the Court may deem proper, or may impose such sanctions (see, e.g., Rule 104) as the Court may deem appropriate. The Court may, in its discretion, conduct hearings to ascertain whether a default has been committed, to determine the decision to be entered or the sanctions to be imposed, or to ascertain the truth of any matter.

Rule 123(a) is derived from FRCP 55(a) and (b), and there was no counterpart in this Court's Rules prior to the promulgation of Rule 123(a). Rules of Practice and Procedure, 60 T.C. 1057, 1129 (1973).

Under the Federal Rules of Civil Procedure, a default pursuant to FRCP 55 is entered when a defendant fails to plead or otherwise defend as provided by the rules.[5] This rule also applies to any claim, cross-claim, or third-party claim. See FRCP 55(d). Thus, a defendant may be entitled to entry of a default pursuant to FRCP 55(a) on the basis of plaintiff's failure to reply to a counterclaim. See 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, sec. 2682, at 409 (1983). Under the Federal Rules of Civil Procedure, it appears that a "plaintiff" for purposes of FRCP 55(a) may be taken as the party that bears the burden of proof, while a "defendant" within the meaning of FRCP 55(a) is analogous to the opposing party who does not bear the burden of proof.

Rule 123(a) provides, as does FRCP 55(a), that *any* party may move for entry of a default. By analogy to FRCP 55(a), the party that bears the burden of proof is entitled to move for entry of a default pursuant to Rule 123(a).[6]

This Court has been reluctant to enter defaults, notably in cases seeking additions to tax for fraud pursuant to section 6653(b). See *Gilday v. Commissioner*, 62 T.C. 260 (1974); *Doncaster v. Commissioner*, 77 T.C. 334 (1981). However, where the taxpayer stated to the Court that he

---

[5]Dismissal pursuant to FRCP 41(b), from which Rule 123(b) is derived, is appropriate when a plaintiff fails to prosecute or to comply with the rules. Rule 123(b) is this Court's counterpart to FRCP 41(b).

[6]By analogy to Rule 41(b), the party that does not bear the burden of proof may move for dismissal pursuant to Rule 123(b). Dismissals pursuant to Rule 123(b) are commonly made in this Court, while this case is the first reported opinion in which a decision will be entered pursuant to a default under Rule 123(a) solely on the basis of well pleaded facts.

would not contest the deficiencies or addition to tax for fraud determined by the Commissioner, a default judgment pursuant to Rule 123(a) was entered. *Gordon v. Commissioner*, 73 T.C. 736 (1980). Further, we stated in *Gordon v. Commissioner* that:

> It may be arguable that our recently adopted default provisions in Rule 123(a), as well as the development of the Federal case law under rule 55, Federal Rules of Civil Procedure (enacted subsequent to *Miller-Pocahontas [Coal Co. v. Commissioner*, 21 B.T.A. 1360 (1931)]),would justify the exercise of our discretion in permitting a default to include a fraud addition to tax without affirmative proof in the case of mere nonappearance at the trial. [73 T.C. at 742; fn. ref. omitted.]

We should, however, reiterate that this case does not present a fraud issue. Consequently, the question of the vitality of *Miller-Pocahontas Coal Co. v. Commissioner*, 21 B.T.A. 1360 (1931), is not before us, and no inference should be drawn as to the effect of this opinion on similar cases that do present a fraud issue. This is not the occasion for overruling or for reaffirming *Miller-Pocahontas*.

Faced with a mountainous work load, this Court should not suffer the continued waste of its time and of the Government's resources in the litigation of cases brought by taxpayers who have no demonstrable desire to continue the litigation. If a taxpayer does not think well enough of his case to defend it where the Government has the burden of proof, this Court should default him. To hold a trial in a case abandoned by the taxpayer is at best an indulgence of archaic manners and at worst an insult to the taxpayers who have a rightful claim on this Court's time. The time has come, at least in transferee liability cases, to declare that we will no longer engage in "one-act pantomimes." See concurring opinion of Judge Wilbur in *Doncaster v. Commissioner*, 77 T.C. at 345 (1981). Entry of a default judgment is appropriate upon a determination in the sound judicial discretion of the Court that the pleadings of the moving party set forth facts sufficient to support the judgment.[7]

---

[7] A number of factors must be considered by the Court in the exercise of its discretion. See 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, sec. 2685, at 423-429 (1983).

Entry of a default has the effect of admitting all well-pleaded facts in respondent's answer, and a default judgment must be supported by respondent's well-pleaded facts. *Trans World Airlines v. Hughes*, 449 F.2d 51, 70 (2d Cir. 1971), revd. on other grounds 409 U.S. 363 (1973); *Rechtzigel v. Commissioner*, 79 T.C. 132, 142 (1982), affd. 703 F.2d 1063 (8th Cir. 1983). A default judgment is a judgment on the merits. *Nishimatsu Construction Co., Ltd. v. Houston National Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

Section 6901(a) provides a procedure under which unpaid estate tax of the transferor may be assessed against and collected from the transferee. However, the existence and extent of a transferee's liability is governed by State law.[8] *Commissioner v. Stern*, 357 U.S. 39 (1958); *Scott v. Commissioner*, 70 T.C. 71 (1978). Because the property transferred to petitioners was located in New York at the date of the death of the decedent, respondent's well-pleaded facts must establish petitioners' liability as transferees pursuant to the laws of the State.

The facts pleaded by respondent establish that Adriana Bosurgi, the decedent, owned certain assets which were part of her estate and which were received by petitioners, the decedent's sons, and distributees, subsequent to her death. The value of the assets received by petitioners is greater than the amount of the deficiency in Federal estate tax and addition to tax determined by respondent. The Estate of Adriana Bosurgi was rendered insolvent as a result of the transfer of its assets to the account of petitioners. The existence and extent of petitioners' liability for Federal estate tax as a distributee of the assets of the Estate of Adriana Bosurgi under the laws of the State of New York are established. See 13 N.Y. Dec. Est. Law Ann. sec. 170 (McKinney Supp. 1967); see also N.Y. Est. Powers & Trusts Law sec. 12-1.1 (McKinney 1967), effective Sept. 1, 1967.

---

[8]Sec. 6324(a)(2) provides for the substantive liability of transferees of the assets of an estate for Federal estate tax due, without regard to State law. Groetzinger v. Commissioner, 69 T.C. 309, 316 (1977); see also *Schuster v. Commissioner*, 312 F.2d 311 (9th Cir. 1962), affg. 32 T.C. 998 (1959). However, sec. 6324(a) applies only to transferees who have received property included in the gross estate pursuant to secs. 2034 through 2042. Here, the transfer of the assets of the estate occurred after the date of death of the decedent. The property was not included in the gross estate of Adriana Bosurgi by reason of secs. 2034 through 2042, but by reason of sec. 2033. Therefore, sec. 6324(a)(2) does not apply.

Therefore, pursuant to section 6901, petitioners are liable as transferees of the assets of the Estate of Adriana Bosurgi for the full amount of the deficiency in Federal estate tax and addition to tax determined by respondent.

To reflect the foregoing,

> *An appropriate order and decision will be entered.*

Reviewed by the Court.

STERRETT, SIMPSON, NIMS, PARKER, KÖRNER, HAMBLEN, COHEN, CLAPP, SWIFT, JACOBS, GERBER, WRIGHT and WELLS, *JJ.*, agree with the majority opinion.

WHITAKER and SHIELDS, *JJ.*, did not participate in the consideration of this case.

---

PARR, *J.*, dissenting: I respectfully dissent. The majority opinion runs counter to a long line of analogous cases going back to 1931. See *Miller-Pocahontas Coal Co. v. Commissioner*, 21 B.T.A. 1360 (1931). Such a drastic change is not required to deal with the problem posed by a petitioner who has failed to answer his mail or to appear at trial, where, as here, Congress has imposed on respondent the burden of proof. Sec. 6902(a); Rule 142(d). The current rules of this Court already afford respondent a wide range of procedures for obtaining judgment in his favor if he wishes to avoid putting on his case.

Rule 37(c) provides one simple and quick remedy. Where petitioner does not file a reply to respondent's affirmative allegations, such allegations are generally deemed denied. However, respondent has 45 days to move that specified allegations in the answer be deemed admitted. That motion may be granted unless the required reply is filed within the time directed by the Court. Respondent can use the admitted allegations to meet his burden of proof. See *Gilday v. Commissioner*, 62 T.C. 260 (1974).

Here, however, petitioner filed a reply denying respondent's affirmative allegations.

Where Rule 37(c) is of no help to respondent, as in this case, he can look to Rule 90. A request for admissions may

be served at any time between 31 days after joinder of issue and 75 days before the date set for call of the case from a trial calendar. Under Rule 90(c) each matter is deemed admitted unless, within 30 days after service, petitioner denies, asserts reasons why he cannot admit or deny, or objects. A petitioner's deemed admissions may thus provide a valid basis for finding respondent's burden has been met, and the case can be decided on respondent's motion for summary judgment. *Doncaster v. Commissioner*, 77 T.C. 334 (1981).

After a trial notice is issued, and up to 45 days before the trial calendar, respondent can invoke Rule 91(f) and move to compel stipulation. This is more cumbersome than a request for admissions and requires the involvement of the Court. Nevertheless, it is a relatively simple procedure where petitioner refuses to respond. We may enter an order deeming facts admitted. Again, such facts can then form the basis for a decision for respondent.

If respondent has failed to timely pursue any of these remedies, he can put on his proof in a one-sided trial. I do not regard such a trial as "an indulgence of archaic manners" or a "one-act pantomime." This Court has often declined to find for respondent solely on the ground that respondent has not met his burden of proof. Bare allegations by respondent, however well pleaded, are not competent evidence. Respondent should not be allowed to ignore the rules and then seek a default judgment as a substitute for preparing his case.

I share Judge Williams' concern for the enormous backlog that plagues the Court, as well as his frustration with petitioners who waste our time. However, I believe the answer lies in encouraging respondent to use the tools we have provided to meet his burden, rather than allowing him to escape that burden entirely.

CHABOT, *J.*, agrees with this dissent.